UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LEONARD SCOVENS,

    Petitioner,

v.                                              Case No. 8:24-cv-837-WFJ-LSG

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

## ORDER

Leonard Scovens, a Florida prisoner, initiated this action by filing a petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). Respondent moves to dismiss the petition as time barred. (Doc. 10). Mr. Scovens opposes dismissal. (Doc. 17). For the reasons explained below, the petition is **DISMISSED as time barred**.

**I.    Background**

On March 23, 1998, Mr. Scovens strangled to death Patricia Reed and her five-year-old son C.R. (Doc. 11-2, Ex. 4, at 3-4). Mr. Scovens had met Ms. Reed in a substance-abuse treatment program two years earlier. (*Id.* at 5-6). On the day of the murders, Mr. Scovens was staying at Ms. Reed's apartment. (*Id.* at 4-5). He stole some of her CDs, took her car without permission, and sold the CDs to buy crack cocaine. (*Id.* at 3). He returned to the apartment and smoked the crack in the bathroom. (*Id.* at 11). Later that day, Mr. Scovens left the apartment again, this time to sell his cellphone and pager. (*Id.* at 13). He

1

used the money to buy more crack, which he smoked before returning to the apartment. (*Id.* at 14).

Upon his return, Mr. Scovens found a letter from Ms. Reed by the sofa. (*Id.* at 15). It said that he had "broke[n] [her] trust" by stealing her CDs and taking her car. (*Id.*) Ms. Reed began to discuss the letter with Mr. Scovens, but he "didn't really want to talk about it." (*Id.*) She followed him into the bathroom and told him she would "press charges." (*Id.* at 16). He "turned her around," grabbed her from behind, and choked her to death. (*Id.* at 17). After she died, he "tied a cord around her neck," "put a plastic bag over her head," and "buried her under some clothes." (*Id.* at 21). When he left the bathroom, Mr. Scovens saw C.R. "sitting on the couch, watching TV." (*Id.* at 24). Mr. Scovens choked C.R. to death, explaining later that he was worried C.R. would "call the police" and that he wanted C.R. to "be with his mother." (*Id.* at 25-27). Mr. Scovens carried C.R. to a bedroom and "covered him in some clothes." (*Id.* at 4).

Over the next few days, Mr. Scovens committed a series of robberies before law enforcement apprehended him. (*Id.*, Exs. 2, 7). During a recorded interview, he confessed to killing Ms. Reed and C.R., providing a detailed account of the murders. (*Id.*, Ex. 4). On March 1, 1999, Mr. Scovens pled guilty to two counts of first-degree murder, four counts of robbery, one count of possession of cocaine, and one count of uttering a forged instrument.[1] (*Id.*, Ex. 13). The same day, he received a total sentence of life imprisonment. (*Id.*, Exs. 14-15). Mr. Scovens did not file a direct appeal. (*Id.*, Exs. 8-9).

---

[1] The charge for uttering a forged instrument related to a check that Mr. Scovens tried to cash after the murders. (Doc. 11-2, Ex. 4, at 31-32).

Over 20 years later, on July 26, 2022, Mr. Scovens moved for postconviction relief under Florida Rule of Criminal Procedure 3.850. (*Id.*, Ex. 19, at 36). As relevant here, he brought a claim of "newly discovered evidence" based on his March 2022 "diagnosis of epilepsy." (*Id.* at 38). According to Mr. Scovens, his recent epilepsy diagnosis "explained a lifetime of strange behavior." (*Id.*) He claimed—without any supporting evidence—that he "was in a form of epileptic seizure called a 'running fit' during the commission of [his] capital crimes." (*Id.*) He also alleged that, had he known of his epilepsy earlier, he "would not have ple[d] guilty." (*Id.*) The postconviction court denied the Rule 3.850 motion as untimely, explaining that Mr. Scovens "fail[ed] to demonstrate that his . . . motion [fell] within any valid exceptions to [Florida's] two-year filing rule." (*Id.* at 56). The appellate court affirmed without explanation. (*Id.*, Ex. 24). Mr. Scovens now seeks federal habeas relief based on his claim of "newly discovered evidence." (Doc. 1).

**II.   Discussion**

Respondent correctly contends that Mr. Scovens's petition is untimely. (Doc. 10). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). AEDPA gives federal habeas petitioners one year to file a § 2254 petition. The limitation period is tolled for the time that a "properly filed application for State post-conviction or other collateral review" is pending in state court. 28 U.S.C. § 2244(d)(2).

Under AEDPA, the limitation period typically starts from "the date on which the judgment became final by the conclusion of direct review." *Id.* § 2244(d)(1)(A). Mr. Scovens's petition is untimely under this triggering date. As noted above, he was sentenced

3

to life imprisonment on March 1, 1999. (Doc. 11-2, Exs. 14-15). Because he did not appeal, his convictions became final on March 31, 1999, when the time to file a direct appeal expired. *See Bailey v. Sec'y, Fla. Dep't of Corr.*, No. 3:20-cv-1463-TJC-LLL, 2024 WL 964197, at *3 (M.D. Fla. Mar. 6, 2024) ("Because Petitioner did not appeal the [ ] judgment and sentence, his conviction became final when the time to file a direct appeal in the state court expired: thirty days after entry of the judgment. . . ."). The AEDPA clock began to run the next day—April 1, 1999. Mr. Scovens did not file any tolling applications over the next year. (Doc. 11-2, Exs. 8-9). Thus, the limitation period ran uninterrupted until it expired on March 1, 2000. Mr. Scovens filed his § 2254 petition on April 4, 2024—almost 25 years late. (Doc. 1).

Mr. Scovens contends, however, that he is entitled to a later start date of the limitation period based on "newly discovered evidence." (Doc. 2 at 1-3). Where, as here, a petitioner "alleges newly discovered evidence . . . the filing deadline is one year from 'the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." *McQuiggin v. Perkins*, 569 U.S. 383, 388-89 (2013) (quoting 28 U.S.C. § 2244(d)(1)(D)). Mr. Scovens claims that his petition rests on facts that "could not have been known" before March 2022, when he was diagnosed with epilepsy. (Doc. 1 at 14). Based on this "timeline," Mr. Scovens argues that his "petition is timely." (*Id.* at 15).

The Court assumes without deciding that Mr. Scovens is entitled to a later start date of March 31, 2022. Even with that generous assumption, the petition is still untimely. As noted above, on July 26, 2022, Mr. Scovens raised his claim of newly discovered evidence

4

in a Rule 3.850 motion. (Doc. 11-2, Ex. 19, at 36). The postconviction court denied the motion as untimely under Florida law, a ruling that was affirmed on appeal. (*Id.* at 56; *id.*, Ex. 24). A postconviction motion that is denied as untimely under state law is not "properly filed," and thus does not toll AEDPA's statute of limitations. *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005); *see also Jones v. Sec'y, Fla. Dep't of Corr.*, 906 F.3d 1339, 1350 (11th Cir. 2018) ("[T]he state court ruled that the Rule 3.850 [m]otion was untimely, and we are required to defer to that ruling. That necessarily means that the motion wasn't 'properly filed,' and thus it didn't toll AEDPA's one-year statute of limitations." (citation omitted)). As a result, Mr. Scovens's Rule 3.850 motion had no tolling effect. Therefore, the limitation period ran uninterrupted from March 31, 2022, until it expired one year later on March 31, 2023. Mr. Scovens missed the deadline by over a year, filing his § 2254 petition on April 4, 2024.[2] (Doc. 1).

Mr. Scovens seeks to avoid dismissal by invoking the actual-innocence exception. (Doc. 17 at 9). He argues that his "epilepsy diagnosis . . . establishes that [he] was suffering from an ongoing epileptic seizure known as a 'running fit' during the time of the alleged offenses." (Doc. 2 at 8). As a result, he allegedly "could not have formed intent to cause death, nor to place a victim in fear."[3] (*Id.*) These allegations are insufficient to establish Mr. Scovens's actual innocence.

---

[2] In his reply, Mr. Scovens notes that his epilepsy diagnosis may have occurred in March 2021 rather than March 2022. (Doc. 17 at 4). The Court assumes without deciding that the diagnosis took place in March 2022—an assumption favorable to Mr. Scovens. If the diagnosis in fact occurred in March 2021, the petition would still be untimely.

[3] Under Florida law, evidence of epilepsy may be admissible to "show lack of specific intent." *Bunney v. State*, 603 So. 2d 1270, 1273 (Fla. 1992).

A petitioner may overcome the expiration of AEDPA's limitation period if he makes "a convincing showing of actual innocence." *McQuiggin*, 569 U.S. at 386. But "tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)); *see also Bousley v. United States*, 523 U.S. 614, 623 (1998) (applying *Schlup* in the guilty-plea context); *Justo v. Culliver*, 317 F. App'x 878, 880 (11th Cir. 2008) (same). "To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." *Schlup*, 513 U.S. at 324.

Mr. Scovens fails to satisfy this "exceedingly narrow" exception. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). Over twenty years after sentencing, Mr. Scovens was diagnosed with epilepsy. (Doc. 11-2, Ex. 20). Based on this diagnosis, he asserts that he committed his crimes while experiencing an "epileptic seizure known as a 'running fit.'" (Doc. 2 at 8). But Mr. Scovens presents no "reliable evidence" to support this assertion. *Schlup*, 513 U.S. at 324. No medical evidence establishes that Mr. Scovens even suffered from epilepsy in March 1998, when the crimes took place. Moreover, Mr. Scovens offers no proof that his conduct during the killings and robberies was consistent with an epileptic seizure. Nor does he show that, as a general matter, epilepsy could cause the type of behavior he exhibited when he killed Ms. Reed and C.R. and committed the robberies. Because there is no reliable evidence that he was suffering from an epileptic fit

during his crimes, Mr. Scovens fails to meet his "burden of establishing" that "it is more likely than not that no reasonable juror would have convicted him."[4] *United States v. Montano*, 398 F.3d 1276, 1285 (11th Cir. 2005).

**III.    Conclusion**

Accordingly, the Court **ORDERS**:

1. Mr. Scovens's petition (Doc. 1) is **DISMISSED as time barred**.

2. The **CLERK** is directed to enter judgment against Mr. Scovens and to **CLOSE** this case.

3. Mr. Scovens is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's dismissal of his petition. 28 U.S.C. § 2253(c)(1). To obtain a certificate of appealability, Mr. Scovens must show that reasonable jurists would debate both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because the petition is time barred, Mr. Scovens cannot satisfy the second prong of the *Slack* test. As Mr. Scovens is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on October 2, 2025.

WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE

---

[4] Mr. Scovens is not entitled to an evidentiary hearing. "The petitioner must make a threshold showing of actual innocence to warrant a hearing." *Sibley v. Culliver*, 377 F.3d 1196, 1206 (11th Cir. 2004). As explained above, Mr. Scovens has not made the required showing. Nor has he "demonstrate[d] a likelihood that an evidentiary hearing will produce the sort of reliable evidence demanded by *Schlup*." *Jemison v. Nagle*, 158 F. App'x 251, 256 (11th Cir. 2005).